1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DOLORES WHITE,                          Case No.  1:24-CV-00633-KES-SKO

12              Plaintiff,                    ORDER GRANTING DEFENDANTS'
                                              PARTIAL MOTION TO DISMISS
13        v.
                                              (Doc.  5)
14   CAPITAL ONE, National Association;
     MARY DICKSON, an individual; and
15   DOES 1 through 50, inclusive,

16              Defendants.

17

18

19          Defendants Capital One and Mary Dickins (sued as "Mary Dickson") (collectively

20   "defendants") filed this motion to dismiss on June 5, 2024, seeking to dismiss plaintiff Dolores

21   White's first, second, fourth, seventh, and eighth causes of action as insufficiently pled pursuant

22   to Federal Rule of Civil Procedure 12(b)(6).[1]  Doc. 5.  White filed her opposition, and Capital

23   One replied.  Docs. 7, 8.  The Court heard oral argument on August 5, 2024.

24

25   _____

     [1]  The complaint sues "Mary Dickson" as the individual defendant.  Doc. 7-1.  In her motion to
26   dismiss, the individual defendant indicates her name is "Mary Dickins" and that she was
     erroneously named in the complaint as "Mary Dickson."  *See* Doc. 5 at 2.  This Order hereafter
27   refers to the defendant as "Mary Dickins," as in the motion to dismiss; all such references are to
     the individual named in the complaint as "Mary Dickson."
28

1   **I.  BACKGROUND AND FACTS[2]**

2       White began working at Capital One in or about September 2019 and initially received

3   positive performance evaluations.  Doc. 7-1 ("Compl.") at ¶¶ 7–8.  In late 2022, White took

4   maternity leave.  *Id.* at ¶ 9.  She returned to work in early 2023 after the birth of her child.  *Id.* at

5   ¶ 10.  After resuming work in early 2023, White worked at home.  *Id.* at ¶¶ 10, 12.  Dickins, a

6   Capital One Team Lead at the time, made comments about White's child crying and making

7   noise in the background.  *Id.* at ¶¶ 3,12.  White's child would cry when the child needed to be

8   breastfed.  *Id.* at ¶ 12.  Dickins told White that she could breastfeed only before or after White's

9   regularly scheduled breaks.  *Id.* at ¶ 11.  White informed Dickins that she also needed to

10  breastfeed at other times due to her child's feeding schedule, but Dickins refused to allow White

11  to breastfeed at such other times.  *Id.* at ¶ 11.

12      From September 9, 2023, to September 26, 2023, White took two weeks of medical leave

13  due to stress, anxiety, and postpartum depression.  *Id.* at ¶¶ 13–15.  White provided Capital One's

14  Leave and Accommodations Center with a note from her medical provider confirming the need

15  for such medical leave.  *Id.* at ¶¶ 13–14.  Upon her return to work from this medical leave, White

16  requested to work a reduced schedule for a limited time, but Dickins informed White that Capital

17  One did not offer reduced schedules.  *Id.* at ¶¶ 16–17.

18      White subsequently used sick days and took time off to attend doctor's appointments and

19  to address issues related to her physical disabilities.  *Id.* at ¶¶ 18–19.  Dickins stated that White

20  was going to be written up for missing work.  *Id.* at ¶ 19.  White informed Dickins that she had

21  medical documentation for the time she was forced to miss work, but Dickins told White that,

22  even with doctor notes, her absences would not be approved.  *Id.*

23      Around November 14, 2023, White provided Capital One's Leave and Accommodations

24  Center with a note from her medical provider advising that White could work only half days.  *Id.*

25  

26  [2]  The facts are taken from the complaint attached to White's opposition.  *See* Doc. 7-1.  The
    complaint attached to the notice of removal omitted page 5 of the complaint.  *See* Doc. 1-1.  The

27  parties confirmed at oral argument that the full complaint is at Doc. 7-1.  The allegations in the
    complaint are taken as true solely for the purposes of this Rule 12(b)(6) motion.  *See Cruz v. Beto*,

28  405 U.S. 319, 322 (1972).

1    at ¶¶ 20–21.  However, Capital One continued to require White to work full time.  *Id.* at ¶ 22.

2    During this period, White communicated with Capital One's Leave and Accommodation Center

3    concerning taking intermittent leave under the California Family Rights Act.  *Id.* at ¶ 23.  White

4    was informed that she had until January 25, 2024, to provide the necessary paperwork related to

5    her request for accommodation and medical leave.  *Id.* at ¶ 24.

6        Despite White having been informed that she had until January 25, 2024, to provide

7    medical documentation to support her California Family Rights Act leave request, Capital One

8    terminated White's employment on January 4, 2024.  *Id.* at ¶ 25.  On January 5, 2024, after being

9    terminated, White received a letter from Capital One's Leave and Accommodation Center stating

10    that Capital One required medical information to evaluate White's pending request for an

11    accommodation, and that she had until January 25, 2024, to provide the necessary medical

12    documentation.  *Id.* at ¶ 26.

13   **II.  STANDARD OF LAW**

14        A motion to dismiss for failure to state a claim upon which relief can be granted tests the

15    legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); Fed. R.

16    Civ. P. 12(b)(6).  Rule 8(a) requires that a pleading contain "a short and plain statement of the

17    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v.*

18    *Iqbal*, 556 U.S. 662, 677–78 (2009).  On a motion to dismiss, the factual allegations of the

19    complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give

20    the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded"

21    allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6

22    (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and

23    the grounds showing entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

24    (internal citation omitted).

25   **III.  DISCUSSION AND ANALYSIS**

26        Defendants challenge the sufficiency of White's first cause of action for retaliation under

27    California Labor Code section 246.5; second cause of action for harassment under the California

28    Fair Employment and Housing Act ("FEHA") based on White's pregnancy and breastfeeding;

fourth cause of action for harassment under FEHA based on White's physical disability; seventh cause of action for retaliation in violation of the California Family Rights Act, Cal. Gov't Code § 12945.1 *et seq.* ("CFRA"); and eighth cause of action for interference with White's exercise of her right to medical leave under the CFRA.

### 1. Retaliation under Cal. Labor Code § 246.5 (First Cause of Action)

In her first cause of action, White claims Capital One retaliated against her for using her paid sick days, in violation of Cal. Labor Code § 246.5, which is part of the Healthy Workplaces, Healthy Families Act of 2014 ("HWHFA").  Section 246.5 provides, in part, that an employer "shall not deny an employee the right to use accrued sick days, discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using accrued sick days [or] attempting to exercise the right to use accrued sick days." *Id.* § 246.5(c)(1).  It also provides that a rebuttable presumption of unlawful retaliation applies in certain circumstances.  *Id.* § 246.5(c)(2).

Capital One argues that the HWHFA did not create a private right of action for violations of Labor Code § 246.5, as another provision, § 248.5, grants only the Labor Commissioner and the Attorney General the ability to bring a civil action under the HWHFA.  *Id.* § 248.5(e) (providing that "[t]he Labor Commissioner or the Attorney General may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article").  White argues that § 248.5(e) nonetheless implies a private right of action because it also refers to "any person or entity" enforcing the act "on behalf of the public as provided for under applicable state law."  *See* Doc. 7 at 10 (quoting Cal. Labor Code § 248.5(e)).  However, this latter reference in § 248.5(e) refers not to a private right of action under the HWHFA, but to the possibility that a party might enforce a violation of the act under another California law provision.

The California court of appeal held in *Seviour-Iloff v. LaPaille*, 295 Cal. Rptr. 3d 762, 779 (2022), that "there is no private right of action" created by Cal. Labor Code § 248.5.  In *Seviour-Iloff*, the court considered whether a plaintiff was allowed to seek civil penalties for violation of the HWHFA's requirement that an employer provide sick leave and concluded that the plaintiff could not assert a claim under the HWHFA for such violation because the Act did not authorize a

4

1    private right of action.  *Id.*

2          Other courts have similarly concluded that the HWHFA did not create a private right of

3    action in the context of violations of Labor Code sections similar to § 246.5.  For example, in

4    *Titus v. McLane Foodservice, Inc.*, No. 2:16-cv-00635-KJM-EFB, 2016 WL 4797497, at *4 (E.D.

5    Cal. 2016), the court found there was no private right of action under the HWHFA when the

6    plaintiff attempted to bring a claim under § 246(h) for violation of sick leave notice provisions.

7    *See also Phuong v. Winco Holdings, Inc.*, No. 2:21-cv-2033-MCE-JDP, 2022 WL 3636369, at *6

8    (E.D. Cal. 2022) (finding no private right of action in Labor Code § 246 for improper payment of

9    sick leave wages and dismissing claim without leave to amend); *Rudolph v. Herc Rentals*, No.

10   2:20-cv-05412-ODW (Ex), 2021 WL 5994514, at *3 (C.D. Cal. Aug. 27, 2021) (finding Labor

11   Code § 248.5 provides for Labor Commissioner to enforce the HWHFA and allows employees to

12   report violations to Labor Commissioner, but gives no private right of action to aggrieved

13   employee).

14         In support of her argument that a private right of action exists for violations of § 246.5,

15   White cites only *Lobo v. Air-India Ltd.*, No. 20-cv-08790-WHO, 2021WL 254312 (N.D. Cal. Jan.

16   26, 2021).  However, *Lobo* specifically noted that "courts have concluded that there is no stand-

17   alone cause of action under the HFHW Act, [although] they do recognize that a claim for

18   violation of the Act may be raised under other provisions of the Labor Code or under the UCL."

19   *Id.* at *3.  The court in *Lobo* dismissed the stand-alone HWHFA claim but gave leave to amend to

20   allow the plaintiff to allege the claim under a different law that did provide a private right of

21   action.  *Id.*

22         Accordingly, Capital One's motion to dismiss White's first cause of action, the stand-

23   alone claim under Labor Code § 246.5, is granted.  As White may be able to assert the alleged

24   violation of Labor Code § 246.5 as a claim under another California statute, *see Lobo*, 2021 WL

25   254312, at *3, the dismissal is with leave to amend.[3]  However, White may not replead a stand-

---

[3] White appears to argue that she could enforce Labor Code § 246.5 through her eighteenth cause of action, which asserts a violation of California Business & Professions Code § 17200.  Doc. 7 at 10–11.  White's eighteenth cause of action is not at issue on defendants' motion to dismiss, and this Order does not address that claim or whether it can be used to enforce a violation of Labor

1    alone cause of action under Cal. Labor Code § 246.5, as the HWHFA does not provide a private

2    right of action.

3        *2. FEHA harassment claim based on breastfeeding/pregnancy (Second Cause of Action)*

4        Defendants argue that White has failed to allege a harassment claim as her allegations are

5    not sufficiently severe or pervasive, or closely linked to a harassing social environment.  Doc. 5 at

6    8.  To establish a prima facie case of a hostile work environment, White must allege that "(1) she

7    is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the

8    harassment was based on her protected status; (4) the harassment unreasonably interfered with her

9    work performance by creating an intimidating, hostile, or offensive work environment; and

10   (5) defendants are liable for the harassment."  *Ortiz v. Dameron Hosp. Ass'n*, 250 Cal. Rptr. 3d 1,

11   11 (Ct. App. 2019).

12       White argues that, in addition to Dickins's comments, the personnel management

13   decision to deny White's accommodations and write up White for missing work is evidence of

14   harassment.  Doc. 7 at 13.  White relies on *Roby v. McKesson Corp.* for the assertion that

15   personnel actions, in addition to supporting retaliation and discrimination claims, can also support

16   a harassment claim if the personnel management decisions reflect a pattern of harassment or bias.

17   *Id.* (citing *Roby v. McKesson Corp.*, 101 Cal. Rptr. 3d 773, 792 (2009)).

18       *Roby* concerned an employee with physical disabilities who had frequent absences

19   resulting in disciplinary action.  *Roby*, 101 Cal. Rptr. 3d at 779.  The employee's supervisor also

20   made frequent comments about the employee's body odor and body sores resulting from

21   medication, ignored the employee at staff meetings and in distributing small gifts, and belittled

22   the employee's job contributions in front of coworkers.  *Id.* at 779–80.  The court found

23   harassment and discrimination claims can overlap as an evidentiary matter "when the actions

24   establish a widespread pattern of bias."  *Id.* at 790 (citing *Miller v. Dep't of Corr.*, 30 Cal. Rptr.

25   3d 797, 815, 115 P.3d 77, 91 (2005)).  The court also noted that acts of discrimination, even if

26   characterized as official employment actions rather than hostile social interactions in the

27   _____

28   Code § 246.5.

6

workplace, "can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Id.* at 790–91.

Defendants argue that personnel management decisions can never provide the evidentiary basis for a FEHA harassment claim, relying upon *Janken v. GM Hughes Electronics*, 53 Cal. Rptr. 2d 741 (1996), and *Reno v. Braid*, 76 Cal. Rptr. 2d 499 (1998).  *See* Doc. 5 at 8–9. However, these court of appeal cases predate the California Supreme Court's decision in *Roby*, which held that personnel management actions can be considered as evidence of harassment when the actions demonstrate a pattern of bias.  *Roby*, 101 Cal. Rptr. 3d at 790; *see also Mock v. Cal. Dep't of Corr. & Rehab.*, No. 1:15-cv-01104-MJS, 2015 WL 5604394, at *12 (E.D. Cal. Sep. 22, 2015) (finding additional criticism and micromanagement of different race employee sufficiently stated claim for harassment through implied message); *Gholson v. Beacon Health Options, Inc.*, No. SACV 22-00445-CJC (DFMx), 2022 WL 19241012, at *2 (C.D. Cal. July 26, 2022) ("they cannot escape liability for harassment simply because they chose to express the message through managerial decisions rather than explicit comments."); *Garcia v. Nestle USA, Inc.*, No. C 23-06199 WHA, 2024 WL 923774 at *4 (N.D. Cal. Mar. 1, 2024) (finding that personnel decisions can support harassment claims following *Roby*).

Defendants also argue that the complaint's allegations fail to establish harassment as they are insufficiently severe or persuasive to alter the social environment of the workplace.  Doc. 8 at 8.  The totality of the allegations must demonstrate "the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being."  Cal. Gov't Code § 12923.  In evaluating whether the allegations rise to this level, a court should consider the frequency of the conduct, whether the conduct was humiliating or physically threatening, the alleged harasser's role and status in the workplace, whether the harasser shared a physical workspace with the victim, whether the harasser and victim's work was closely intertwined, and

1  any other relevant or pertinent work environment factors that might increase or decrease the

2  severity of the harassment.  *See Bailey v. S.F. Dist. Attorney's Office*, 323 Cal. Rptr. 3d 369, 386–

3  87 (2024).

4       The specific allegations within the complaint concerning White's pregnancy harassment

5  claim include: (1) Dickins informed White she could breastfeed only before or after her scheduled

6  breaks and denied her request for additional accommodation to breastfeed; (2) Dickins would

7  "make comments about Plaintiff's newborn child crying and making noise"; (3) Dickins denied

8  White the requested accommodation of working a reduced schedule to treat her postpartum

9  depression; and (4) Dickins told White she would be written up for missing work to attend

10  medical appointments for her postpartum depression despite White's documented medical excuse.

11  Compl. at ¶¶ 11–12.  The complaint lacks allegations concerning the frequency of Dickins's

12  comments; the content, circumstances, and tone of the comments; and whether White received

13  any "write-up" for her medical absences.  Dickins is implied to be White's supervisor, which

14  would add severity to the allegations, but the complaint fails to provide additional information

15  concerning White and Dickins's working relationship or concerning the nature and context of

16  Dickins's comments.  Based on the limited allegations in the complaint, the allegations of

17  harassment are not severe or pervasive.  *See Bailey*, 16 Cal. 5th at 633 (finding harassing

18  comment's severity and effect is dependent on nature of interactions within workplace); *Griffith*

19  *v. Logisticare Sols., LLC*, No. CV 16-8666 PSG (JEMx), 2017 WL 8220435  at *4 (C.D. Cal.

20  Mar. 9, 2017) (finding allegations that coworkers made comments to be insufficient to state

21  harassment claim without details concerning frequency of comments, when they were made, or

22  their content).

23       The isolated comments alleged in the complaint – e.g., that Dickins "made comments

24  about" White's child crying in the background – do not meet the severity or pervasive

25  requirements needed for White's pregnancy harassment claim to survive a Rule 12(b)(6)

26  challenge.  Similarly, the allegations of Dickins's denials of accommodation concerning White's

27  work schedule do not identify how Dickins delivered the denials, the reasons given for the

28  denials, or whether other workers faced the same or different treatment in similar circumstances.

Without more, the denials do not establish severe or pervasive harassing or biased conduct.  *See Gholson*, 2022 WL 19241012, at *3 (requiring allegations of widespread and patterned favoritism or other biased conduct to find harassment in personnel decisions).  White has failed to sufficiently allege that the denials of additional breaks were for a harassing purpose or communicated a targeted harassing message affecting the workplace environment, particularly as the complaint notes that Dickins indicated White could take additional time to breastfeed her child right before or after her scheduled breaks.  Similarly, the general allegation that Dickins threatened to write-up White for absences from work does not establish harassing behavior in the absence of more specific details concerning the context of that statement and whether any adverse consequences ensued.

Defendants' motion to dismiss White's second cause of action is granted.  As White may be able to remedy the deficiencies on this claim by alleging additional facts, this cause of action is dismissed with leave to amend.[4]

### 3. Disability harassment (Fourth Cause of Action)

Defendants move to dismiss White's fourth cause of action, for disability harassment, on the ground that the personnel decisions on which White bases the claim fail to establish a severe, widespread pattern of bias and do not, by themselves, constitute a harassing message.  Doc. 8 at 10.  White's claim for disability harassment is based upon: (1) Dickins's denial of White's request for a reduced schedule to take care of her heath in late 2023, and (2) Dickins informing White that she would be written up for missing work even if she had a documented medical excuse.  Compl. at ¶¶ 17, 19.  The complaint contains even fewer allegations concerning harassment based on a physical disability than concerning White's claim of harassment based on her breastfeeding, and this claim must be dismissed on the same grounds.  White fails to allege a pervasive or severe harassing environment sufficient to establish a prima facie claim of harassment based on her disability.  Dickins's denial of a scheduling accommodation, and her

---

[4] If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  *See Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (citing *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014)).

isolated statement that White would be written up for missing work even if she had a medical excuse, without further elaboration or specifics, are insufficient to allege harassment.  *See Gholson*, 2022 WL 19241012, at *3.  Defendants' motion to dismiss this claim is therefore also granted.  As White may be able to allege additional facts in support of her claim, this cause of action is dismissed with leave to amend.

### 4. CFRA Retaliation (Seventh Cause of Action)

To successfully plead a CFRA retaliation claim a plaintiff must allege (1) the defendant employer was covered by CFRA, (2) the plaintiff was eligible for CFRA protections, (3) the plaintiff exercised her right to take CFRA leave for a qualifying purpose, and (4) the plaintiff suffered an adverse employment action because she exercised her right to take CFRA leave. *Moore v. Regents of Univ. of Cal.*, 206 Cal. Rptr. 3d 841, 867 (Ct. App. 2016) (internal citations omitted).  Capital One does not contest that it is covered by CFRA.  *See* Doc. 5.

To be eligible for CFRA leave, the employee must have "more than 12 months of service with the employer" and "at least 1,250 hours of service with the employer during the previous 12-month period" at the time of requesting CFRA leave.  Cal. Gov't Code. § 12945.2.  White alleges she began working for Capital One in 2019 and returned from maternity leave in early 2023. Compl. at ¶¶ 9–10.  White does not allege that she worked enough hours at Capital One in the 12-month period prior to filing the complaint to be eligible for CFRA leave.  *See* Compl.  This is a necessary fact that White must sufficiently allege to establish that she was eligible for CFRA leave and, therefore, to assert a CFRA retaliation claim.  *See Dudley v. Dep't of Transp.*, 108 Cal. Rptr. 2d 739, 745 (Ct. App. 2001); *Griffith*, 2017 WL 8220435, at *6–7.  White's seventh cause of action for retaliation under the CFRA is dismissed, with leave to amend to include additional facts supporting her CFRA eligibility.

### 5. CFRA Interference (Eighth Cause of Action)

To assert a CFRA interference claim, the employee must allege: "(1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights." *Williams v. UPS*, No. CV 17-6773-PLA, 2018 WL 6136824, at *6 (C.D. Cal. Sept. 4, 2018) (internal citations and quotations omitted).  As with White's CFRA retaliation claim, in

failing to sufficiently allege her eligibility for CFRA leave, White fails to allege a necessary component of her CFRA interference claim.  Alleging that a plaintiff is eligible for CRFA leave is essential to making a CFRA claim for interference.  *Griffith*, 2017 WL 8220435, at *6. Therefore, White's eighth cause of action for interference with a CFRA claim is also dismissed with leave to amend.

**IV. CONCLUSION**

Based on the foregoing, the Court ORDERS:

1.  Capital One's motion to dismiss White's first cause of action, for retaliation under Cal. Labor Code § 246.5, is GRANTED, with leave to amend to the extent set forth above. White may not replead a stand-alone cause of action under Cal. Labor Code § 246.5.

2.  Capital One and Dickins's motion to dismiss White's second and fourth causes of action, for harassment under FEHA, is GRANTED with leave to amend.

3.  Capital One's motion to dismiss White's seventh and eighth causes of action, for retaliation and interference in violation of the CFRA, is GRANTED with leave to amend.

4.  White may file an amended complaint consistent with this order within 21 days of the entry of the order.

5.  Defendants' responsive pleading is due 21 days after plaintiff's filing of an amended complaint or, if plaintiff elects not to file an amended complaint, 21 days after the deadline for plaintiff to file an amended complaint.

IT IS SO ORDERED.

    Dated:   __October 23, 2024__                    _____

                                                     UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28