1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                        **EASTERN DISTRICT OF CALIFORNIA**

8

9    DOLORES WHITE,                          Case No.  1:24-cv-00633-SKO

10                   Plaintiff,              ORDER VACATING HEARING DENYING
                                            IN PART AND GRANTING IN PART
11          v.                              DEFENDANT'S PARTIAL MOTION TO
                                            DISMISS
12   CAPITAL ONE, N.A., et al.,
                                            (Doc. 35)
13
                     Defendants.
14   _____/

15                          **I.      INTRODUCTION**

16          The matter before the Court is Defendants Capital One, N.A. and Mary Dickins[1]

17   ("Defendants")' Partial Motion to Dismiss the Verified First Amended Complaint (the "Motion"),

18   seeking to dismiss Plaintiff Dolores White ("Plaintiff")'s first, second, fourth, seventh, and eighth

19   causes of action as insufficiently pled pursuant to Federal Rule of Civil Procedure 12(b)(6) and

20   nineteenth cause of action as procedurally defective pursuant to Federal Rule of Civil Procedure

21   15(a).[2] (Doc. 17).  On December 17, 2025, Plaintiff filed her opposition, (Doc. 18), and Defendants

22   filed their reply on December 27, 2027, (Doc. 24).

23          The Court has reviewed the parties' papers and finds the matter suitable for decision without

24   oral argument.  The hearing set for April 23, 2025, will therefore be vacated.  Having considered

25   the briefing, and for the reasons set forth below, Defendants' Motion will be granted in part and

26   denied in part.

27   _____

28   [1] Mary Dickson was erroneously sued as Mary Dickson.  (*See* Doc. 17).
     [2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 15).

## II.    BACKGROUND

**A.    Factual Background[3]**

Plaintiff began working at Defendant Capital One in or about September 2019 and initially received positive performance evaluations.  (Doc. 16 ("FAC.") at ¶ 7).  In late 2022, she took maternity leave.  (*Id.* at ¶ 9).  Plaintiff returned to work in early 2023 after the birth of her child.  (*Id.* at ¶ 10).  After resuming work in early 2023, Plaintiff worked at home.  (*Id.* at ¶¶ 10, 14).  After Plaintiff's return to work, Defendant Dickins, a Capital One Team Lead and Plaintiff's direct supervisor at the time, told Plaintiff that she could breastfeed only before or after Plaintiff's two regularly scheduled breaks.  (*Id.* at ¶¶ 11, 12, 14).  Plaintiff informed Defendant Dickins that she also needed to breastfeed at other times due to her child's feeding schedule as her child needed to be fed more than twice during a workday.  (*Id.* at ¶ 3).  Defendant Dickins refused to allow Plaintiff to breastfeed at other times and threatened Plaintiff with write ups or terminations if she were to take more than two breaks per day.  (*Id.* at ¶ 11).  In response, Plaintiff inquired when such a policy was implemented as, after a prior pregnancy, a different manager had allowed Plaintiff to take breastfeeding breaks as needed.  (*Id.*).  Defendant Dickins replied stating "it has always been this way."  (*Id.*).  Throughout the course of this conversation, Defendant Dickins sounded "annoyed" and "irritated."  (*Id.*).  Soon after this conversation, Plaintiff again asked Defendant Dickins when Defendant Capital One started prohibiting additional breastfeeding breaks.  (*Id.* at ¶ 12).  Defendant Dickins replied that she would look into it, but never followed up with Plaintiff.  (*Id.*).

In response to these conversations with Defendant Dickins, Plaintiff contacted Brittney Maholmes, another Capital One Sales Representative who was breastfeeding at the time, to inquire whether Maholmes' manager limited her to two breastfeeding breaks per day.  (*Id.* at ¶ 13).  Maholmes responded that her manager allowed her to take breaks as needed.  (*Id.*).  Plaintiff also contacted Defendant Capitol One Business Bank Coordinator Deandrea Jones, informing her that Defendant Dickins was only allowing Plaintiff two breastfeeding breaks a shift.  (*Id.*).  Jones replied that Plaintiff should speak to a different manager because Defendant Dickins' behavior was not right

---

[3] In ruling on a motion to dismiss, the Court is to take the factual allegations in the complaint as true. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

since Plaintiff previously was able to take additional breastfeeding breaks after a prior pregnancy. (*Id.*)

During this time, Defendant Dickins also made comments about White's child crying and making noise in the background. (*Id.* at ¶¶ 3, 11, 14). Plaintiff's child would cry when the child needed to be breastfed. (*Id.* at ¶ 14). Specifically, during Plaintiff and Defendant Dickins' one-on-one meetings, which occurred two to three times a week, Defendant Dickins instructed Plaintiff that no one should be able to hear her child crying in the background of customer calls and that she would write Plaintiff up for not limiting "background noise" during Plaintiff's calls. (*Id.*). Plaintiff responded by stating that her child was hungry due to her inability to take additional breaks to feed the child. (*Id.*). Defendant Dickins responded by again instructing Plaintiff to follow Plaintiff's work schedule. (*Id.*). During these one-on-one meetings, Defendant Dickins also informed Plaintiff that if Plaintiff did not provide a doctor's note for the times she needed to breastfeed or attend doctor's appointments, Plaintiff would be terminated. Defendant Dickins tone during these discussions was annoyed, short, frustrated, and irritated with Plaintiff. (*Id.*).

Defendant Dickins' limitation on Plaintiff's ability to take additional breastfeeding breaks in conjunction with Defendant Dickins' threats of retaliation resulted in Plaintiff feeling helpless, depressed, stressed, and anxious. (*Id.* at ¶ 15). Between September 9, 2023, to September 26, 2023, Plaintiff took two weeks of medical leave due to stress, anxiety, and postpartum depression. (*Id.* at ¶ 16). Plaintiff provided Defendant Capital One's Leave and Accommodations Center with a note from her medical provider confirming the need for such medical leave. (*Id.* at ¶¶ 16–17). Upon her return to work from this medical leave, Plaintiff requested to work a reduced schedule for a limited time, but Defendant Dickins informed Plaintiff that Defendant Capital One would not allow Plaintiff to work on a reduced schedule. (*Id.* at ¶¶ 19–20).

Plaintiff subsequently used sick days and took time off to attend doctor's appointments and to address issues related to her physical disabilities. (*Id.* at ¶ 21). Defendant Dickins stated Plaintiff was going to be written up for missing work. (*Id.* at ¶ 22). Plaintiff informed Defendant Dickins that she had medical documentation for the time she had to miss work, but Defendant Dickins told Plaintiff that, even with doctor notes, her absences would not be approved. (*Id.* at ¶ 22).

Around November 14, 2023, Plaintiff provided Defendant Capital One's Leave and Accommodations Center with a note from her medical provider advising that Plaintiff could work only half days. (*Id.* at ¶¶ 20–21). Defendant Capital One, however, continued to require Plaintiff to work full time. (*Id.* at ¶ 22). During this period, Plaintiff communicated with Defendant Capital One's Leave and Accommodation Center regarding taking intermittent leave under the California Family Rights Act. (*Id.* at ¶ 23). Plaintiff was informed she had until January 25, 2024, to provide the necessary paperwork related to her request for accommodation and medical leave. (*Id.* at ¶ 24).

Despite informing Plaintiff that she had until January 25, 2024, to provide medical documentation to support her California Family Rights Act leave request, Defendant Capital One terminated Plaintiff's employment on January 4, 2024. (*Id.* at ¶ 25). On January 5, 2024, after being terminated, Plaintiff received a letter from Defendant Capital One's Leave and Accommodation Center stating that Defendant Capital One required medical information to evaluate Plaintiff's pending request for an accommodation, and that she had until January 25, 2024, to provide the necessary medical documentation. (*Id.* at ¶ 26).

**B.     Procedural Background**

Plaintiff filed her original complaint in Fresno County Superior Court and removed to this court on May 29, 2024. (Doc. 1). On June 6, 2024, Defendants filed a motion under Rules 12(b)(6) of the Federal Rules of Civil Procedure, contending that Plaintiff had not alleged a plausible claim upon which relief could be granted as to her first cause of action for retaliation under California Labor Code section 246.5; second cause of action for harassment under the California Fair Employment and Housing Act ("FEHA") based on Plaintiff's pregnancy and breastfeeding; fourth cause of action for harassment under FEHA based on Plaintiff's physical disability; seventh cause of action for retaliation in violation of the California Family Rights Act, Cal. Gov't Code § 12945.1 *et seq.* ("CFRA"); and eighth cause of action for interference with Plaintiff's exercise of her right to medical leave under the CFRA. (Docs. 5, 6). The Court granted the motion on October 23, 2024, dismissing those claims with leave to amend. (Doc. 14).

Plaintiff filed her First Amended Complaint on November 12, 2024. (Doc. 16). On December 3, 2024, Defendants filed a partial motion to dismiss pursuant to Rule 12(b)(6) of the

1    Federal Rules of Civil Procedure, again asserting that Plaintiff has failed to state a claim as to her
2    first cause of action for Wrongful Termination; second cause of action for Breastfeeding/Pregnancy
3    Harassment (Gov. Code § 12940 *et seq.*); fourth cause of action for  Physical Disability Harassment
4    (Gov. Code § 12940(j)); seventh cause of action for CFRA Retaliation; eighth cause of action for
5    CFRA Interference.  (Doc. 17-1 ("MTD") at 3).  Defendants also alleged Plaintiff's nineteenth cause
6    of action for Labor Code § 233(c) Retaliation was procedurally defective under Federal Rule of
7    Civil Procedure 15(a).  (*Id.* at 15–16).

8                                    **III.    LEGAL STANDARD**

9         A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") tests the
10   legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or
11   the absence of sufficient facts alleged under a cognizable legal theory.  *Conservation Force v.*
12   *Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted).   In
13   resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations
14   contained in the pleadings, exhibits attached to the complaint and matters properly subject to judicial
15   notice."  *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1030–31 (9th Cir. 2008)
16   (internal quotation marks and citations omitted).   Courts may not supply essential elements not
17   initially pled, *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014), and "'conclusory allegations
18   of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state
19   a claim,'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting
20   *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996)).

21        To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted
22   as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
23   (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted);
24   *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.
25   2009).  The Court must accept the well-pleaded factual allegations as true and draw all reasonable
26   inferences in favor of the non-moving party.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998
27   (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan*
28   *Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153

1  (9th Cir. 2000).

2      In practice, "a complaint . . . must contain either direct or inferential allegations respecting

3  all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*,

4  550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts,

5  the plaintiff should be afforded leave to amend. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection*

6  *Serv. Inc.,* 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

7                        **IV.    DISCUSSION**

8      Defendants challenge the sufficiency of Plaintiff's first cause of action for retaliation under

9  California Labor Code section 246.5; second cause of action for harassment under the California

10  Fair Employment and Housing Act ("FEHA") based on Plaintiff's pregnancy and breastfeeding;

11  fourth cause of action for harassment under FEHA based on Plaintiff's physical disability; seventh

12  cause of action for retaliation in violation of the California Family Rights Act, Cal. Gov't Code

13  § 12945.1 *et seq.* ("CFRA"); eighth cause of action for interference with Plaintiff's exercise of her

14  right to medical leave under the CFRA. (MTD at 3). They also contend that her nineteenth cause

15  of action for Labor Code § 233(c) Retaliation is procedurally defective. (*Id.* at 15–16).

16      *1.  Wrongful Termination (First Cause of Action)*

17      Defendant Capital One first moves to dismiss Plaintiff's first cause of action, in which she

18  claims Defendant Capital One wrongfully terminated her under California common law in violation

19  of public policy, for failure to state a claim. (*See* FAC ¶ 32–41).

20      California courts have authorized a tort claim for wrongful termination where "an

21  employer's traditional broad authority to discharge an at-will employee 'may be limited by statute

22  … or by considerations of public policy.'" *Tameny v. Atlantic Richfield Co.*, 610 P.2d 1330, 1332

23  (Cal. 1980) ("*Tameny*") (quoting *Petermann v. Int'l Bhd. of Teamsters*, 344 P.2d 25, 27 (Cal. Ct.

24  App. 1959)). As to the alleged statutory violation, Plaintiff points to California Labor Code section

25  246.5, which is part of the Healthy Workplaces, Healthy Families Act of 2014 ("HWHFA"). Section

26  246.5 provides, in part, that an employer "shall not deny an employee the right to use accrued sick

27  days, discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an

28  employee for using accrued sick days [or] attempting to exercise the right to use accrued sick days."

1    *Id.* § 246.5(c)(1).  It also provides that a rebuttable presumption of unlawful retaliation applies in

2    certain circumstances.  *Id.* § 246.5(c)(2).

3    Defendant Capital One contends that *Tameny* claims are circumscribed by any limitations

4    on the underlying statutory violation.  (MTD at 6).  Defendant further contends that, because—as

5    the District Court found its order dismissing the original complaint—the HWHFA does not create a

6    private right of action for violations of Labor Code § 246.5, it cannot operate as a statutory violation

7    underlying a valid *Tameny* claim.  The Court agrees.

8    Several California courts have held that "[a]llowing plaintiff to pursue a tort cause of action

9    based on a violation of [a statute that provided for a specific remedial scheme] would impermissibly

10   give her broader remedies and procedures than those provided by the statute" and thus, such a

11   "statute cannot serve as the basis for a tort claim of wrongful termination in violation of public

12   policy." *Dutra v. Mercy Med. Ctr. Mt. Shasta*, 146 Cal. Rptr. 3d 922, 925 (Cal. Ct. App. 2012); *see

13   id.* (*"[W]hen the constitutional provision or statute articulating a public policy also includes certain

14   substantive limitations in scope or remedy, these limitations also circumscribe the common law

15   wrongful discharge cause of action*.  Stated another way, the common law cause of action cannot

16   be broader than the constitutional provision or statute on which it depends." (emphasis added)

17   (quoting *City of Moorpark v. Superior Ct.*, 959 P.2d 752, 762 (Cal. 1998)).  Consistent with the

18   District Court's prior ruling, the Court finds that section 246.5 provides a specific remedial scheme

19   that does not include a private right of action that could support a *Tameny* claim.  (Doc. 14 at 5).

20   Accordingly, Defendant Capital One's motion to dismiss Plaintiff's first cause of action,

21   Plaintiff's claim for wrongful termination, is granted.  In light of the Plaintiff's prior opportunity to

22   amend to "assert the alleged violation of Labor Code § 246.5 as a claim under another California

23   statute," the Court finds that further leave to amend would be futile.  *See Evenfe v. Esalen Inst.*, No.

24   15-CV-05457-LHK, 2016 WL 3965167, at *6 (N.D. Cal. July 24, 2016).

25   *2. FEHA harassment claim based on breastfeeding/pregnancy (Second Cause of Action)*

26   Defendants move to dismiss Plaintiff's second cause of action, FEHA harassment based on

27   breastfeeding/pregnancy, for failure to state a claim.  (MTD at 6–11).

28   To establish a prima facie case of a hostile work environment, Plaintiff must allege that "(1)

she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." *Ortiz v. Dameron Hosp. Ass'n*, 250 Cal. Rptr. 3d 1, 11 (Cal. Ct. App. 2019). Plaintiff contends that, in addition to Defendant Dickins's comments, the personnel management's decision to deny Plaintiff's accommodations and write up Plaintiff for missing work is evidence of harassment. (Doc. 18 at 14). Plaintiff relies on *Roby v. McKesson Corp.*, *Roby*, 219 P.3d 749, 763 (Cal. 2010), and *Miller v. Department of Corrections*, 115 P.3d 77 (Cal. 2005), for the assertion that personnel actions, in addition to supporting retaliation and discrimination claims, can also support a harassment claim if the personnel management decisions reflect a pattern of harassment or bias. *Id.* (citing *Roby*, 219 P.3d at 792; *Miller*, 115 P.3d at 90).

*Roby* concerned an employee with physical disabilities who had frequent absences resulting in disciplinary action. *Roby*, 219 P.3d at 779. The employee's supervisor also made frequent comments about the employee's body odor and body sores resulting from medication, ignored the employee at staff meetings and in distributing small gifts, and belittled the employee's job contributions in front of coworkers. *Id.* at 779–80. The court found harassment and discrimination claims can overlap as an evidentiary matter "when the actions establish a widespread pattern of bias." *Id.* at 790 (citing *Miller*, 115 P.3d at 91). The court also noted that acts of discrimination, even if characterized as official employment actions rather than hostile social interactions in the workplace, "can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Id.* at 790–91.

Defendants contend that personnel management decisions themselves cannot constitute harassment. (MTD at 7). And although they concede that in certain cases a plaintiff may be able to rely on evidence related to personnel management decisions to establish a claim for FEHA harassment, Defendants contend that such cases are "rare" and only involve "extreme scenarios of a widespread pattern or practice of discriminatory personnel management decisions such that those

1  actions themselves carry a harassing message." (*Id.* at 7–8 (citing *Miller*, 115 P.3d at 80 ("[W]hen

2  such sexual favoritism in a workplace is sufficiently widespread it may create an actionable hostile

3  work environment in which the demeaning message is conveyed to female employees that they are

4  viewed by management as 'sexual playthings' or that the way required for management."))).

5  Defendants argue that the instant case is not one of those "rare" cases. (*Id.* at 8). The Court agrees.

6      Cases like *Roby* and *Miller* establish that the touchstone for whether personnel decisions are

7  relevant to a harassment claim is whether those personnel decisions contribute to a harassing

8  message that affects the "social environment of the workplace." *Roby*, 219 P.3d at 763. While

9  Plaintiff's opposition to the Motion attempts to cast her complaint as alleging that Defendant

10  Dickins actions communicated a message that "breastfeeding employees suffering from stress,

11  anxiety, and post-partum depression are unwanted in the workplace," Plaintiff's allegations do not

12  establish a wide enough pattern or practice of discriminatory personnel management that rose to the

13  level of sending a message that affected the "social environment of the workplace." *Id.* at 763.

14      Defendants also contend that the complaint's allegations fail to establish harassment as they

15  are insufficiently severe or persuasive to alter the social environment of the workplace. (MTD at

16  8). To be sufficiently "severe or pervasive," the totality of the allegations must demonstrate "the

17  harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to

18  disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the

19  job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being."

20  Cal. Gov't Code § 12923. In evaluating whether the allegations rise to this level, a court should

21  consider the frequency of the conduct, whether the conduct was humiliating or physically

22  threatening, the alleged harasser's role and status in the workplace, whether the harasser shared a

23  physical workspace with the victim, whether the harasser and victim's work was closely intertwined,

24  and any other relevant or pertinent work environment factors that might increase or decrease the

25  severity of the harassment. *See Bailey v. S.F. Dist. Attorney's Office*, 552 P.3d 433, 447–48 (Cal.

26  2024).

27      Considering these factors, the District Court previously dismissed this claim based on a

28  finding that "[t]he [original] complaint lack[ed] allegations concerning the frequency of Defendant

Dickins's comments; the content, circumstances, and tone of the comments; and whether Plaintiff received any 'write-up' for her medical absences" and "fail[ed] to provide additional information concerning Plaintiff and Defendant Dickins's working relationship or concerning the nature and context of Defendant Dickins's comments." (Doc. 14 at 8 (citing *Bailey*, 552 P.3d at 447–48 (finding harassing comment's severity and effect is dependent on nature of interactions within workplace); *Griffith v. Logisticare Sols., LLC*, No. CV 16-8666 PSG (JEMx), 2017 WL 8220435 at *4 (C.D. Cal. Mar. 9, 2017) (finding allegations that coworkers made comments to be insufficient to state harassment claim without details concerning frequency of comments, when they were made, or their content)).

Plaintiff's complaint has addressed the issues identified in the prior order dismissing this claim. Specifically, Plaintiff now includes allegations about the frequency of Defendant Dickins' comments, (FAC ¶ 14), the content, circumstances and tone of the comments, (*id.* ¶¶ 11, 14, 20, 22), whether Plaintiff received any write ups (*id.* ¶ 22), and additional information regarding the nature and context of Defendant Dickins' comments, (*id.* ¶ 11, 14, 20). Moreover, the amended complaint includes information about "how Defendant Dickins delivered the denials," (*id.* ¶ 22); "the reasons given for the denials," (*id.*); and "whether other workers faced the same or different treatment in similar circumstances," (*id.* ¶ 13). In sum, the FAC now includes specific allegations that: (1) Defendant Dickins (Plaintiff's direct supervisor) "sounded annoyed and irritated" when telling Plaintiff she could breastfeed only before or after her scheduled breaks and denied her request for additional accommodation to breastfeed; (2) Defendant Dickins refused to look into or follow up on Plaintiff's inquiry as to when Defendant Capital One began allegedly prohibiting additional breastfeeding breaks; (3) Plaintiff spoke to Brittney Maholmes, another sales representative who worked under a different manager, who informed Plaintiff that Maholmes' manager allowed her to take breastfeeding breaks as needed; (4) Capitol One Business Bank Coordinator Deandrea Jones told Plaintiff to speak to another manager about what Defendant Dickins was doing as it was "not right," in light of the fact that Plaintiff had previously been able to take breastfeeding breaks as needed after a prior pregnancy under a different manager; (5) Defendant Dickins would, "two to three times per week" and in a way that sounded "annoyed, short, frustrated, and irritated with

Plaintiff," tell Plaintiff "that no one should be able to hear Plaintiff's baby crying in the background during customer calls" and that she would "write Plaintiff up for having 'background noise' during Plaintiff's calls;' (6) during weekly meetings, Defendant Dickins "told Plaintiff that if Plaintiff did not get a doctor note to cover the time that Plaintiff needed to breastfeed and to attend doctor appointments, Plaintiff was going to be terminated" in tone that communicated that Defendant was "annoyed, short, frustrated, and irritated with Plaintiff;" (7) Defendant Dickins denied Plaintiff the requested accommodation of working a reduced schedule to treat her postpartum depression; and (8) Defendant Dickins' denial of Plaintiff's request for additional time to breastfeed her child "coupled with Defendant Dickins' constant threats of retaliation caused Plaintiff to feel helpless, depressed, stressed, and anxious."  (FAC at ¶¶ 11–15, 22).

While Defendants contend that these allegations are not sufficiently severe or pervasive to plausible state a claim, many of the cases on which they rely predate a 2019 change in the law.  (*See* MTD at 8–9 (citing only cases decided between 1998 and 2015)).  But while "[p]rior to 2019, [the severe or pervasive] requirement was quite a high bar for plaintiffs to clear, even in the context of a motion for summary judgment," in 2019, section 12923 "clarified existing law in numerous respects" making it easier for plaintiffs to establish severity and pervasiveness.  *Beltran v. Hard Rock Hotel Licensing, Inc.*, 315 Cal. Rptr. 3d 842, 853 (Cal. Ct. App. 2023), *review denied* (Feb. 28, 2024).  Section 12923(e) provides that "[h]arassment cases are rarely appropriate for disposition on summary judgment," Cal. Gov't Code § 12923(e)—let alone a motion to dismiss, as is at issue here.  In light of this legislative change and Plaintiff's additional allegations, the Court "decline[s] to insert [its] own subjective viewpoint and to judge the severity of [the defendant's] comments and conduct."  *Freem v. Superior Ct. of Orange Cnty.*, No. G061920, 2024 WL 2889981, at *11 (Cal. Ct. App. June 7, 2024).

Defendants' motion to dismiss Plaintiff's second cause of action is denied.

*3. Disability Harassment (Fourth Cause of Action)*

Defendants next move to dismiss Plaintiff's fourth cause of action, disability harassment, for failure to state a claim.

Defendants contend that Plaintiff's allegations as to disability harassment are even less

supported than her pregnancy/breastfeeding harassment claim.  (MTD at 12).  As with Plaintiff's FEHA harassment claim based on breastfeeding/pregnancy, the Court agrees that Plaintiff's disability harassment allegations do not establish a wide enough pattern or practice of discriminatory personnel management that rose to the level of sending a message that affected the "social environment of the workplace," *Roby*, 219 P.3d at 763, and therefore that evidence related to adverse personnel decisions are not relevant to Plaintiff's disability harassment claim.  But unlike Plaintiff's breastfeeding/pregnancy allegations, without allegations related to alleged adverse personnel decisions, what is left of Plaintiff's allegations fails to state a claim for disability harassment.

Focusing only on the allegations not involving personnel decisions, Plaintiff's claim for disability harassment is based upon the following allegations: (1) Defendant Dickins threatened to terminate Plaintiff if she did not get a doctor's note to cover the time Plaintiff needed to breastfeed and attend doctor's appointments; (2) Plaintiff felt "helpless, depressed, stressed, and anxious" in response to Defendant Dickins' threats; (3) Plaintiff suffered from stress, anxiety, and postpartum depression that required her to take time off of work in September 2023; (4) Defendant Dickins denied Plaintiff's request for a reduced schedule to take care of her heath when Plaintiff returned to work; (5) Defendant Dickins instructed Plaintiff that she would be written up for missing work even if she had a documented medical excuse; and (6) Defendant Capital One's Leave and Accommodations Center required Plaintiff to continue to work full time even when provided a doctor's note stating Plaintiff could only work half hours.  (FAC at ¶¶ 14–16, 18–19, 22, 25).  Considering these allegations, the Court finds that "it is unclear whether the alleged harassment 'consists of conduct outside the scope of necessary job performance.'"  *Canale v. AutoZone, Inc.*, No. 2:24-CV-03295-CSK, 2025 WL 104778, at *5 (E.D. Cal. Jan. 15, 2025) (quoting *Roby*, 47 Cal. 4th at 707).  And without any evidence that Plaintiff was subjected to offensive, humiliating, distressing, or intruding conduct, *see* Cal. Gov't Code § 12923, beyond distress associated with statements of work expectations or company policy and associated consequences of noncompliance—which may separately be actionable as a discrimination claim on a theory of failure to accommodate, which Plaintiff separately pleads, (FAC 69–77 (Count 5))—Plaintiff cannot state a claim for harassment.

1    Accordingly, Defendants motion to dismiss Plaintiff's fourth cause of action, Plaintiff's

2    claim for disability harassment, is granted.  In light of the Plaintiff's prior opportunity to amend to

3    "allege additional facts in support of her claim," the Court finds that further leave to amend would

4    be futile.  *See Evenfe v. Esalen Inst.*, No. 15-CV-05457-LHK, 2016 WL 3965167, at *6 (N.D. Cal.

5    July 24, 2016).

6        *4. CFRA Retaliation (Seventh Cause of Action)*

7    Next, Defendant Capital One moves to dismiss Plaintiff's seventh cause of action, CFRA

8    retaliation, for failure to state a claim.  (MTD at 12–14).

9    To successfully plead a CFRA retaliation claim a plaintiff must allege (1) the defendant

10   employer was covered by CFRA, (2) the plaintiff was eligible for CFRA protections, (3) the plaintiff

11   exercised her right to take CFRA leave for a qualifying purpose, and (4) the plaintiff suffered an

12   adverse employment action because she exercised her right to take CFRA leave.  *Moore v. Regents

13   of Univ. of Cal.*, 206 Cal. Rptr. 3d 841, 867 (Cal. Ct. App. 2016) (internal citations omitted).  To be

14   eligible for CFRA leave, the employee must have "more than 12 months of service with the

15   employer" and "at least 1,250 hours of service with the employer during the previous 12-month

16   period" at the time of requesting CFRA leave.  Cal. Gov't Code § 12945.2.  Plaintiff alleges she

17   began working for Capital One in 2019 and returned from maternity leave in early 2023.  (FAC at

18   ¶¶ 9–10).

19   The District Court dismissed Plaintiff's original complaint for failing to "allege that she

20   worked enough hours at Defendant Capital One in the 12-month period prior to filing the complaint

21   to be eligible for CFRA leave."  (Doc. 14 at 10).  Specifically, the District Court advised that alleging

22   the number of hours worked for the purposes of alleging eligibility for CFRA leave is "a necessary

23   fact . . . to assert a CFRA retaliation claim."  (*Id.* (citing *Dudley v. Dep't of Transp.*, 108 Cal. Rptr.

24   2d 739, 745 (Cal. Ct. App. 2001); *Griffith*, 2017 WL 8220435, at *6–7)).  In Plaintiff's FAC, she

25   has amended her allegations, adding allegations that she "worked about 40 hours per week

26   throughout Plaintiff's employment with Defendant Capital One," making her "eligible for CFRA

27   leave."  (FAC ¶ 27).  This is sufficient to plausibly state a CFRA claim.  *Cf. Barajas v. Carriage

28   Servs., Inc.*, No. 19-CV-02035-EMC, 2020 WL 1189854, at *4 (N.D. Cal. Mar. 12, 2020) ("In

1    *Landers*, the Ninth Circuit held that "[a] plaintiff may establish a plausible claim [for overtime] by

2    estimating the length of her average workweek during the applicable period." (quoting *Landers v.*

3    *Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2015))).

4        Defendants contend that Plaintiff's allegations are "an attempt to dance around [Plaintiff's]

5    pleading requirement without committing perjury."   (MTD at 14.)   They further contend that

6    Plaintiff's estimate is implausible in light of her other allegations that "she took maternity leave for

7    the birth of [her] child in late 2022 and returned to work in early 2023, (FAC ¶¶ 9–10), and that she

8    was taken off work again in September 2023, (*id.* ¶ 16)."   (*Id.*)   But Plaintiff's allegations that she

9    estimates that she worked 1,250 hours in the prior year on a forty hour a week schedule is not

10   implausible even in light of Plaintiff's other allegations of leave.   1,250 hours converts to a little

11   over 31 weeks, which could be met even with 20 weeks of leave in the prior 12 months.   Moreover,

12   the cases Defendants cite in support of their argument that Plaintiff's allegations are insufficient to

13   plausibly allege CFRA eligibility the complaint at issue are inapposite as, unlike in the present case,

14   the complaints at issue in the cited cases included "no factual allegations regarding the hours

15   [plaintiff] worked."  *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 91 (D.D.C. 2014); *see*

16   *also Griffith*, 2017 WL 8220435, at *6 ("the FAC does not . . . assert that Plaintiff worked more

17   than 1,250 hours during the 12-month period prior to the request"); *Dudley v. Dep't of Transp.*, 108

18   Cal. Rptr. 2d 739, 745 (Cal. Ct. App. 2001) ("The complaint does not allege that [Plaintiff] had at

19   least 1,250 hours of service with [Defendant] during any particular 12-month period.").

20       Moving on to the other elements, Plaintiff has not alleged that Defendant Capital One is a

21   covered employer under the CFRA.   Therefore, Plaintiff's seventh cause of action for retaliation

22   under the CFRA is dismissed.   However, Plaintiff will be permitted leave to amend solely with

23   respect to the issue of whether Defendant meets the definition of an employer.

24       *5. CFRA Interference (Eighth Cause of Action)*

25       Defendant Capital One also moves to dismiss Plaintiff's eighth cause of action, CFRA

26   interference, for failure to state a claim.  (MTD at 14–15).  To assert a CFRA interference claim, the

27   employee must allege: "(1) the employee's entitlement to CFRA leave rights; and (2) the employer's

28   interference with or denial of those rights." *Williams v. UPS*, No. CV 17-6773-PLA, 2018 WL

6136824, at *6 (C.D. Cal. Sept. 4, 2018) (internal citations and quotations omitted).   As with Plaintiff's CFRA retaliation claim, in failing to sufficiently allege her eligibility for CFRA leave, Plaintiff fails to allege a necessary component of her CFRA interference claim, *see Moore*, 206 Cal. Rptr. 3d at 867, 870, as alleging that a plaintiff is eligible for CRFA leave is essential to making a CFRA claim for interference, *Griffith*, 2017 WL 8220435, at *6.   Therefore, Plaintiff's eighth cause of action for interference with a CFRA claim is dismissed with leave to amend.   Plaintiff will be permitted leave to amend solely with respect to the issue of whether Defendant meets the definition of an employer.

### 6. Labor Code § 233(c) Retaliation (Nineteenth Cause of Action)

Finally, Defendant Capital One moves to dismiss Plaintiff's nineteenth cause of action, retaliation in violation of Labor Code § 233(c) on the basis that it is procedurally defective.   (MTD at 15–16).   With this claim, Plaintiff asserts a new claim brought before the Court for the first time in her FAC.   Defendants contend that this new claim should be dismissed or stricken because it exceeds the scope of amendment permitted the District Court's October 23, 2024 order, and Plaintiff did not otherwise seek leave of the Court to amend the pleadings to add new claims as required by Federal Rule of Civil Procedure 15(a).   (Docs. 17-1 at 16; 24 at 12).   The prior order in this case expressly limited the scope of Plaintiff's leave to amend.   (Doc. 14 at 9–11).

California district courts have occasionally considered new claims submitted in an amended complaint where the prior order of dismissal granted leave to amend without limitation.   *See Topadzhikyan v. Glendale Police Dept.*, No. CV 10–387, 2010 WL 2740163, at *3 n. 1 (C.D. Cal. July 8, 2010) (declining to strike new claims where Court granted leave to amend without limitation); *Gilmore v. Union Pacific R. Co.*, No. 09–cv–02180, 2010 WL 2089346, at *4 (E.D. Cal. May 21, 2010) (finding that Plaintiff was not required to seek leave to add new claims where Court granted leave to amend without limitation and Defendants would not be prejudiced by addition of claims).   In cases like this, however, where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken.   *See, e.g.*, *Kennedy v. Full Tilt Poker*, No. CV 09–07964, 2010 WL 3984749, at *1 (C.D.Cal.2010) (stating that court previously struck amended complaint

because plaintiffs failed to seek leave to add new claims or defendants); *Andrew W. v. Menlo Park City School Dist.*, 2010 WL 3001216, at *2 (N.D. Cal. July 29, 2010) (agreeing that new claims should be stricken because prior order did not grant leave to add new claims, but construing plaintiff's opposition as belated motion for leave to amend). In this case, the prior order granting leave to amend was limited in scope, (Doc. 14 at 9–11), and Plaintiff was therefore required to seek leave of the Court before adding new claims. *See Rodriguez v. Cnty. of San Joaquin by & through San Joaquin Cnty. Hum. Servs. Agency*, No. 216CV00770TLNJDP, 2022 WL 956558, at *7 (E.D. Cal. Mar. 30, 2022) ("When the language of an order clearly states that a plaintiff may only amend to address certain deficiencies identified in the order, courts have held that a plaintiff is barred from adding new claims or parties."); *see also Jameson Beach Prop. Owners Assoc. v. United States*, 2014 WL 4925253, at *4 (E.D. Cal. Sept. 29, 2014); *Espino v. Walgreen Co.*, 2016 WL 931098, at *3 (E.D. Cal. Mar. 11, 2016).

Because the District Court limited the scope of its leave to amend—and Plaintiff did not receive leave to plead any additional cause of action in the FAC—the Court will dismiss count nineteen.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court ORDERS:

1.    The hearing on the Motion, currently set for April 23, 2025, is VACATED;

2.    Defendant Capital One's motion to dismiss Plaintiff's first cause of action, for wrongful termination under California common law in violation of public policy and nineteenth cause of action, for retaliation in violation of Labor Code § 233(c) is GRANTED without leave to amend;

3.    Defendant Capital One's motion to dismiss Plaintiff's seventh cause of action, for CFRA retaliation, and eighth cause of action, for CFRA interference, is GRANTED with leave to amend to the extent set forth above;

4.    Defendants motion to dismiss Plaintiff's fourth cause of action, for FEHA harassment based on disability, is GRANTED without leave to amend;

5.    Defendants motion to dismiss Plaintiff's second cause of action, FEHA

1    harassment based on breastfeeding/pregnancy, is DENIED;

2        6.    White may file an amended complaint consistent with this order within 21

3            days of the entry of the order; and

4        7.    Defendants' responsive pleading is due 21 days after Plaintiff's filing of an

5            amended complaint or, if Plaintiff elects not to file an amended complaint,

6            21 days after the deadline for Plaintiff to file an amended complaint.

7
8    IT IS SO ORDERED.

9    Dated:    __**March 17, 2025**__                    _____/s/ *Sheila K. Oberto*_____

10                                    UNITED STATES MAGISTRATE JUDGE

17